Steven Eugene **PARKER**, Appellant,

v.

**STATE of Oklahoma,** Appellee.

No. F–94–1098.

Court of Criminal Appeals of Oklahoma.

April 23, 1996.

Rehearing Denied June 21, 1996.

James T. Rowan, Oklahoma Indigent Defense System, Norman, Larry W. Tedder, Oklahoma City, for defendant at trial.

Steve Parker, Assistant District Attorney, Oklahoma City, for the State at trial.

William H. Luker, Deputy Division Chief, Capital Direct Appeals Division, Oklahoma Indigent Defense System, Norman, for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Sandra D. Howard, Assistant Attorney General, Oklahoma City, for appellee on appeal.

## OPINION

JOHNSON, Presiding Judge:

Steven Eugene Parker, appellant, was tried by jury for the crime of first degree felony murder in violation of 21 O.S.1991, § 701.7, in Case No. CF–93–1832 in the District Court of Oklahoma County before the Honorable Virgil C. Black, District Judge. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at life imprisonment without the possibility of parole. The trial court sentenced appellant in accordance with the jury's verdict. From this Judgment and Sentence, appellant has perfected his appeal to this Court.

On March 24, 1993, Joardan Ahmed was at work at Classen Foods, a convenience store owned by him and his wife, Ismat Bezum. Ms. Bezum, who was nine months pregnant, went to the store around 12:30 p.m. to bring lunch to her husband. Ms. Bezum was sitting on a bar stool behind the cash register. Their son was present in the store and was watching television. Mr. Ahmed joined his wife and son and was standing behind them when two customers entered the store. Both men were black and one man was noticeably taller than the other. The shorter of the two, later determined to be Sammy Polin, brought some candy to the cash register. The taller man, identified by Ms. Bezum at trial as the defendant, ordered Ms. Bezum to give him the money from the cash register.

Ms. Bezum opened the register and gave him the money, which was approximately $100.00 to $150.00. The defendant was very excited and Mr. Ahmed told him to calm down, that they would do whatever he wanted. The defendant did not calm down and demanded Mr. Ahmed's wallet.

As Ms. Bezum was looking for the wallet under the register where it was normally kept, she heard a shot and saw her husband falling over the wall. She noticed smoke in front of his chest and blood on his chest. Ms. Bezum grabbed her husband as he fell to the floor then pushed the panic button under the register and tried to call 911.

On March 26, 1993, homicide detective Mike Veasey received information from Oklahoma City Police Detective Ron Mitchell that the two suspects in the robbery and murder wanted to turn themselves in. Appellant and Sammy Polin were taken into custody. Their statements were taken on video tape and appellant admitted to being in the store but did not recall shooting Mr. Ahmed.

The State sought the death penalty for appellant and, during the second stage of trial, admitted evidence in support of three aggravating circumstances as well as victim impact evidence. Appellant presented testimony of several family members who testified about his early childhood and present character.

■ On appeal, appellant first asserts that his videotaped statement was improperly admitted into evidence because he had unequivocally invoked his right to counsel during the course of making this statement. He argues that because the police did not cease their interrogation when he invoked this right all statements which followed were inadmissible.

A hearing was held outside the presence of the jury to determine the admissibility of the taped statement. Detective Veasey testified, and the videotape shows, that he read appellant his rights under *Miranda.* Appellant responded that he understood his rights and that he wanted to talk to the officers. At the hearing, defense counsel objected to the admission of the tape on the basis that appellant had exercised his right to remain silent and was induced to continue making statements in violation of the Fifth Amendment. However, on appeal, appellant claims that the tape was inadmissible because he had invoked his right to counsel. In addition, when the defense cross-examined the detective who took appellant's statements, no questions were asked regarding the invocation of the right to counsel. Therefore, because the error raised on appeal was not the objection made at trial, our review is for plain error only.

Appellant claims in this appeal that his request for counsel was unequivocal and that his video taped statements were admitted in violation of his right to counsel. The Supreme Court has recently addressed this issue in *Davis v. United States,* 512 U.S. ——,

114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). The *Davis* Court found that if a suspect makes a request for counsel that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking his right to counsel, Supreme Court precedents do not require that questioning cease. *Id.* at ——, 114 S.Ct. at 2355. The Court stated further that if it were to require questioning to cease if a suspect makes a statement that *might* be a request for an attorney, the clarity and ease of application necessary for effective law enforcement would be lost. *Id.* at ——, 114 S.Ct. at 2356.

In light of the circumstances in the case at bar, a reasonable officer questioning appellant may not have interpreted his statements as an unequivocal request for counsel. After being read his *Miranda* rights, appellant stated that he understood them. When asked, "Do you wish to talk?", appellant said, "I'll give you some statements." Then he said, "I would like to talk to an attorney." Detective Veasey asked, "Are you wanting an attorney right now, cause if you are, you know, the interview is over." Appellant replied, "You said I could stop when I wanted to, right?" Detective Veasey responded, "That's right," and appellant said, "I said I'd give you some statements and I can stop when I want to." We find that there was no unequivocal invocation of a right to counsel here.

The admission of appellant's video taped statements was not error. Moreover, the statements were not a confession by appellant. Rather, he admitted being in the store but said that he heard a shot, ran and "blanked out." Accordingly, this proposition of error must fail.

■ In his second proposition of error, appellant claims the trial court erred in allowing the State to question his stepmother, Patricia Fleeks, about a statement appellant had made at a family meeting. While the defense objected to this line of questioning, the trial court overruled the objection because the prosecutor's questioning was a proper subject for cross-examination as it had been brought up on direct examination.

We find the trial court ruled properly in this case.

Title 12 O.S.1991, § 2611(C) provides that cross-examination shall be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. Furthermore, the court may permit inquiry into additional matters as if on direct examination. The extent of cross-examination rests in the discretion of the trial court and reversal is only warranted where there is an abuse of discretion resulting in prejudice to the defendant. *Walker v. State*, 887 P.2d 301, 314 (Okl.Cr.1994).

In the instant case, appellant opened up the topic of statements which were made by him at a family meeting by introducing the testimony of Patricia Fleeks who was present for part of the discussion. Appellant cannot present a witness to testify as to certain facts and then expect the State not to question the same witness further on cross-examination. One who opens up an area of inquiry on direct examination is not then able to complain when that area is pursued further on cross-examination. *Id.* Consequently, we find no abuse of discretion by the trial court here, and this proposition of error is without merit.

■ For his third assignment of error, appellant asserts that it was reversible error to allow the prosecution to introduce co-defendant Polin's out-of-court statements which implicated appellant in the crime. This is so, because Polin had previously refused to testify and was therefore, unavailable for cross-examination.

At trial, Detective Veasey testified regarding the arrest and interrogation of appellant. In so doing, the Detective testified to a certain statement made by co-defendant Polin. However, it was defense counsel who first interjected the statement of Polin for the jury's consideration. In fact, it was the prosecutor who objected to defense counsel's introduction of Polin's statement into the trial. In any event, once a statement is admitted it becomes a proper subject of cross-examination. *Id.* As discussed in the preceding proposition of error, the line of inquiry was opened up by the defense. Appellant cannot now complain because they were prevented

from introducing only a portion of the statement made by co-defendant Polin. This argument fails.

For his fourth proposition of error, appellant claims that the trial court lacked subject matter jurisdiction to try his case because the Information failed to allege the elements of the underlying felony in the first degree felony murder charge.

█ The United States and Oklahoma Constitutions require that an accused person be informed of the charges against which he must defend. This requirement is rooted in the Due Process Clauses of both constitutions. U.S. Const. amends. VI, XIV; Okla. Const. art. 2, §§ 7, 20. This notice requirement helps an accused to prepare an adequate defense to the charges against him as it informs him of what he must be prepared to meet. *Warren v. State*, 24 Okl.Cr. 6, 11, 215 P. 635 (1923). Simply put, due process requires that a defendant have notice of the crime with which he is charged.

█ In Oklahoma, notice is commonly given by the charging document known as the Information, which is filed against an accused. The Information must set forth a statement of facts constituting the offense sufficient to form the essentials of the crime and apprise a defendant of what he must meet. The Information should enable a person of common understanding to know against what charge they must be prepared to defend.[1] In addition to the Due Process Clause, Oklahoma statutes also set forth requirements for the sufficiency of an Information. 22 O.S.1991, §§ 401–410. Pursuant to 22 O.S.1991, § 401, an Information must contain a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.

In *Miller v. State*, 827 P.2d 875, 878 (Okl. Cr.1992), this Court interpreted these statutes and cases and held that a sufficient Information must allege all elements of the crime charged. The Court looked to the Due Process Clause and case law and determined that failure to state all particulars of a crime, i.e., to allege every material element, was fatal to jurisdiction. *Id.* at 879 (citing *Chandler v. State*, 96 Okl.Cr. 344, 255 P.2d 299, 301 (1953)). The Court reasoned that an Information without facts alleging every material element of the crime charged did not adequately charge a crime. The Court concluded that such an Information was defective and could not confer subject matter jurisdiction on the trial court. *Id.*

█ Today, this Court continues to hold that defects in an Information are governed by the Due Process Clause. However, upon further consideration, we now reject *Miller*'s finding that all defects are fatal to jurisdiction. Jurisdiction is conferred on the trial court by the commission of a public offense where venue properly lies in that trial court. 22 O.S.1991, §§ 121–136. Thus, a trial court's jurisdiction is triggered by the filing of an Information alleging the commission of a public offense with appropriate venue.[2] Therefore, this Court concludes that any failure to allege facts constituting the offense raises due process questions but does not affect the trial court's jurisdiction.

*Miller* created a bright-line rule that all Informations not alleging each element of a charged crime would be reversed. Such rules are easy to understand and follow.[3] The *Miller* rule was intended to provide an understandable, easy rule which would require specificity and simplicity in initial criminal pleading while fulfilling the due process notice requirement. In the years since *Miller*, this Court has had the opportunity to observe the effects of this bright-line rule. We have determined that despite its advan-

---

**1.** *Maney v. State*, 53 Okl.Cr. 438, 13 P.2d 597, 598 (1932); *Wilcox v. State*, 13 Okl.Cr. 599, 166 P. 74 (1917); 22 O.S.1991, § 401(2).

**2.** The district courts have unlimited original jurisdiction over all justiciable matters unless otherwise provided in the constitution. Okla. Const. art. 7, § 9.

**3.** *See e.g. Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (custodial statements not admitted against defendant if officers fail to warn defendant of constitutional rights before custodial interrogation).

tages, a bright-line rule works best in areas of law where a defect will always result in a constitutional or statutory violation.

 The failure to allege each element of a crime does not always constitute a due process violation. Where the Information alleges an offense and pleads particular facts constituting the offense in ordinary language, such that a person of common understanding can know what is intended and prepare a defense to the charge, no due process violation occurs. This Court will no longer apply the *Miller* bright-line test. Accordingly, we hereby reject the requirement set forth in *Miller* that an Information must specifically allege each element of the crime in order to be sufficient to confer jurisdiction on the district court. To the extent any of our prior cases have held that to confer jurisdiction upon a trial court an Information must allege all elements of the crime charged, they are hereby overruled as to that holding.[4]

 Consistent with Oklahoma constitutional requirements, case law, and criminal procedure, this Court will thus ask whether the Information gives the defendant notice of the charges against him and apprises him of what he must defend against at trial. This determination will be made on a case-by-case basis in each appeal where the issue is raised. This Court will look to the "four corners" of the Information together with all material that was made available to a defendant at preliminary hearing or through discovery to determine whether the defendant received notice to satisfy due process requirements. If upon review of the Information and the material record we find the defendant did not have sufficient notice, a due process violation will be found to have occurred. We would caution prosecutors to be careful and to adequately plead acts sufficient to give notice as required by statute.

 We now apply this test to this case and ask whether appellant was provided notice of the charge against him and apprised of what he must defend against. Appellant's Information reads:

> On or about the 24th day of March, 1993, A.D., the crime of murder in the first degree was feloniously committed in Oklahoma County, Oklahoma, by Steven Eugene Parker and Samuel Deneil Polin Jr who while acting jointly in the commission of robbery with firearms wilfully and unlawfully killed Joardan Saifuddin Ahmed by shooting him with a pistol inflicting mortal wounds which caused his death on the 24th day of March, 1993, contrary to the provisions of Section 701.7 of Title 21 of the Oklahoma Statutes, and against the peace and dignity of the State of Oklahoma[.]

While the Information set forth facts alleging that appellant committed the crime of felony murder, it failed, as claimed by appellant, to allege facts to support the underlying felony of robbery with firearms. Nonetheless, a review of the preliminary hearing transcript demonstrates appellant was apprised of the facts constituting the underly-

4. *Tiger v. State*, 900 P.2d 406 (Okl.Cr.1995); *Pickens v. State*, 885 P.2d 678 (Okl.Cr.1994); *Miller v. State*, 827 P.2d 875 (Okl.Cr.1992); *Plotner v. State*, 762 P.2d 936 (Okl.Cr.1988); *Hendricks v. State*, 698 P.2d 477 (Okl.Cr.1985) (relied on in *Plotner*); *Nunley v. State*, 660 P.2d 1052 (Okl.Cr.), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 179 (1983); *Lamb v. State*, 626 P.2d 1355 (Okl.Cr.1981); *White v. State*, 582 P.2d 1334 (Okl.Cr.1978) (relied on in *Plotner*); *Williams v. State*, 579 P.2d 194 (Okl.Cr.1978); *Wilds v. State*, 545 P.2d 779 (Okl.Cr.1976); *Fish v. State*, 505 P.2d 490 (Okl.Cr.1973); *Groom v. State*, 419 P.2d 286 (Okl.Cr.1966) (relied on in *Williams*); *Gibson v. State*, 328 P.2d 718 (Okl.Cr.1958); *Frazier v. State*, 267 P.2d 155 (Okl.Cr.1954); *Vandiver v. State*, 97 Okl.Cr. 217, 261 P.2d 617 (1953); *Raper v. State*, 96 Okl.Cr. 18, 248 P.2d 267 (1952); *Group v. State*, 94 Okl.Cr. 401, 236 P.2d 997 (1951) (relied on in *Plotner*); *Jones v. State*, 94 Okl.Cr. 15, 229 P.2d 613 (1951); *Douglas v. State*, 93 Okl.Cr. 132, 225 P.2d 376 (1950); *McCoy v. State*, 92 Okl.Cr. 412, 223 P.2d 778 (1950); *Argo v. State*, 88 Okl.Cr. 107, 200 P.2d 449 (1948); *Stokes v. State*, 86 Okl.Cr. 21, 189 P.2d 424 (1948); *Ex parte Burnett*, 78 Okl.Cr. 147, 145 P.2d 441 (1944); *Dunbar v. State*, 75 Okl.Cr. 275, 131 P.2d 116 (1942); *Armour v. State*, 72 Okl.Cr. 44, 112 P.2d 1116 (1941); *Sparkman v. State*, 67 Okl.Cr. 245, 93 P.2d 1095 (1939); *State v. Sowards*, 64 Okl.Cr. 430, 82 P.2d 324 (1938) (relied on in *Plotner*); *Jerome v. State*, 28 Okl.Cr. 131, 229 P. 527 (relied on in *Stokes*); *Cole v. State*, 15 Okl.Cr. 361, 177 P. 129 (1919) (relied on in *Stokes*); *Abrams v. State*, 13 Okl.Cr. 11, 161 P. 331 (1916); *Fletcher v. State*, 2 Okl.Cr. 300, 101 P. 599 (1909); *Stout v. Terr.*, 2 Okl.Cr. 500, 103 P. 375 (1909).

ing felony of robbery with firearms.[5] Thus, he was placed on notice as to the offense he must defend against at trial. Accordingly, this proposition of error is denied.

■ In the first stage of trial the court granted the prosecution's request to play an audio tape recording of the 911 telephone call from the crime scene. This tape is the subject of appellant's fifth proposition of error. The defense did not object to that portion of the tape which involved only Ismat Bezum's conversation with the 911 operator. The defense did object to the remaining portion which consisted of conversations between third parties, also present at the scene, and the 911 operator. Appellant argues that the introduction of this evidence was error because the tape contained out-of-court statements from persons who did not testify at the trial. Since appellant did not object at trial, and does not object now, to Ismat Bezum's portion of the call, it is only the remaining portion of the tape which should be considered in determining prejudice.

Title 12 O.S.1991, § 2403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise. The probative value of the out-of-court statements at issue here was not outweighed by the danger of unfair prejudice. The most inflammatory portion of the 911 tape was the cries and screams of Ismat Bezum. However, this portion of the tape is not under consideration on appeal. The remaining portion of the tape, as described by appellant on appeal, was primarily the voice of an unidentified person who spoke matter of factly about the crime scene as he observed it. We do not find that this evidence was unduly prejudicial.

Appellant has not demonstrated how the admission of this relevant evidence was more prejudicial than probative, nor has he shown that the trial court abused its discretion in admitting the tape. This proposition of error does not warrant relief.

■ In his sixth proposition of error, appellant argues that the introduction of photographs of the victim's body which depicted the bullet entry wounds was improper and prejudicial. Appellant contends that these photographs had no probative value and were introduced only to inflame the jury.

■ This Court has firmly established that the admissibility of photographs is a matter within the trial court's discretion. *Crawford v. State*, 840 P.2d 627, 635 (Okl.Cr. 1992). Absent an abuse of that discretion, this Court will not reverse the trial court's determination. *Id.* We find that the photographs here were useful to establish the corpus delicti and to corroborate any testimony regarding the manner of the victim's death.

In this case, the defense promulgated at trial the theory that the bullet had "ricocheted off of the counter, hitting one of the cigar boxes on the counter, and then struck the victim." Therefore, the photographs in this case were particularly probative to help the jury analyze the defense theory against the State's charge that the victim was shot directly by appellant. As a consequence, the probative value of the photographs substantially outweighed the danger of unfair prejudice. Finding no abuse of the trial court's discretion, this proposition is without merit.

Appellant claims, in his seventh proposition of error, that he did not have notice of the evidence to be used against him in the second stage of trial. He further asserts that the prosecutor should not have been allowed to question defense witnesses about a prior act of misconduct committed by him in 1990.

First, appellant claims the prosecutor should not have been allowed to question defense witnesses about particular acts of conduct engaged in by him, specifically an incident where he pointed a gun at a woman

5. The preliminary hearing evidence consisted of testimony describing how appellant entered the store, brandished a firearm and demanded money from the cash register. Against the will of the store owner she handed the cash over to appellant, who then demanded the victim's wallet. While the victim's wife was looking for the wallet under the cash register, she heard a shot and saw her husband fall to the floor.

and told her he was going to "shoot her grill out." Second, appellant asserts a discovery violation. He claims there was no notice under 21 O.S.1991, § 701.10 of the introduction of this evidence.

 The first issue raised by appellant here occurred during the second stage of trial when the defense presented numerous witnesses to testify to appellant's good character. Among these witnesses was appellant's mother, Marilyn Bratcher, who testified that appellant was a good person and deserved some hope. On cross-examination, and in compliance with 12 O.S.1991, § 2404(A)(1), the prosecutor asked her about a prior instance of conduct where appellant pointed a gun at a woman and threatened to "shoot her grill out." Appellant asserts that the prosecutor should not have been allowed to question defense witnesses about a prior act of misconduct on his part.

This Court has consistently held that witnesses who testify to the defendant's good character may be questioned further by the State. "When a criminal defendant puts his character at issue, ... the State may, on cross-examination or rebuttal introduce evidence of bad character." *Walters v. State,* 848 P.2d 20, 23 (Okl.Cr.1993). We find the prosecutor's inquiry here was proper impeachment of a character witness.

 The second issue raised by appellant concerns his assertion of a discovery violation and lack of notice under 21 O.S.1991, § 701.10. Appellant argues that he did not have pretrial notice that this prior incident of misconduct would be introduced. We find appellant's claim to be without merit.

First, "the Section 701.10 notice requirement has never been extended to cover questions the State is entitled to ask during cross-examination." *Walker v. State,* 887 P.2d 301, 317 (Okl.Cr.1994). In addition, the notice requirement is also inapplicable to testimony offered on rebuttal. *Wall v. State,* 763 P.2d 103, 105 (Okl.Cr.1988). Finally, this Court has held that the defendant is consid-

ered to be on notice that his record will be used to prove he posed a continuing threat to society. *Mann v. State,* 749 P.2d 1151, 1159 (Okl.Cr.), *cert. denied,* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988). The continuing threat aggravator was also alleged here.[6] In light of the foregoing, we find this proposition of error to be without merit.

For his eighth assignment of error, appellant asserts that the prosecutor improperly elicited sympathy for the victim throughout trial. Appellant first alleges that error occurred during voir dire. We have reviewed the comments pointed to by appellant and do not find reversible error.

 Next, appellant criticizes comments made during opening statement. However, when the comments were made, defense counsel made a conscious decision not to object. When the prosecutor lodged an objection during defense counsel's closing argument, defense counsel explained that he had not objected during the State's opening statement and hoped that the State did not object during his. Consequently, any allegation about opening statement, absent fundamental error, is waived. *Freeman v. State,* 876 P.2d 283, 287 (Okl.Cr.), *cert. denied,* ── U.S. ──, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). Moreover, "[w]e have long held that when inadmissible evidence or an improper comment is presented to a jury, an admonishment to the jury by the court that the evidence or comment is not to be considered will cure any error." *Cheatham v. State,* 900 P.2d 414, 425 (Okl.Cr.1995). This Court is reluctant to reverse a conviction upon error which could have been cured at trial. *Id.* Accordingly, we find the questionable comments made during opening statement do not constitute fundamental error.

 Appellant also complains about questions to Ismat Bezum, the victim's widow, regarding the details of the crime. He further complains about comments to elicit sympathy for the victim and his family made

---

**6.** The discovery code requires that prior criminal convictions of the accused be made available to the defense. The prosecution met this requirement here, by turning over appellant's rap sheet. The rap sheet included a police incident number

for the incident in question and the prosecutor was able to obtain a copy of the report from the police department. Defense counsel also had open access to the prosecutor's file.

during first-stage closing argument. "Allegations of prosecutorial misconduct should not cause a reversal of judgment or modification of sentence unless their cumulative effect is such as to deprive the defendant of a fair trial and fair sentencing proceeding." *Id. Pickens v. State*, 850 P.2d 328, 343 (Okl. Cr.1993), *cert. denied*, 510 U.S. 1100, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994). The prosecutor's questions to Ismat Bezum did not deprive appellant of a fair trial. With respect to the comments made during closing argument, "[w]e have long held that counsel for both the defendant and the State must be accorded a liberal freedom to argue the evidence and its logical inferences during closing arguments." *Cheatham*, 900 P.2d at 425; *Jones v. State*, 738 P.2d 525, 530 (Okl.Cr. 1987); *Lewis v. State*, 732 P.2d 1, 3 (Okl.Cr. 1987).

▮▮▮ For his last allegation of improper use of evidence to elicit sympathy, appellant contends that the introduction of victim impact evidence in the second stage was unduly prejudicial and rendered the trial fundamentally unfair. Under Oklahoma law, victim impact evidence relating to the personal characteristics of the victim and the emotional impact of the crime on the victim's family is a relevant consideration of Oklahoma's capital sentencing juries. *Freeman*, 876 P.2d at 289. Title 22 O.S.Supp.1993, § 984.1 provides:

> Each victim, or members of the immediate family of each victim or person designated by the victim or by family members of the victim, may present a written victim impact statement or appear personally at the sentence proceeding and present the statements orally.

In the instant case, the State filed a "Notice of Intent to Use Victim Impact Evidence" in which it stated that it would introduce the testimony of Ismat Bezum and Quasi Alam, a person designated by the victim's family to speak. We find the evidence presented was appropriate victim impact evidence. Even with the presentation of this evidence, appellant did not receive the death penalty; rather, he was sentenced to life without the possibility of parole. Therefore, this proposition of error does not merit relief.

Finally, in his ninth proposition of error, appellant contends that the combined effect of the alleged errors outlined above deprived him of a fair trial. We find that none of the individual errors raised were sufficient to warrant relief. "When individual errors alleged are without merit, there can be no error by accumulation." *Walker*, 887 P.2d at 314; *Roberts v. State*, 868 P.2d 712, 722 (Okl.Cr.), *cert. denied*, —— U.S. ——, 115 S.Ct. 158, 130 L.Ed.2d 96 (1994). This proposition is denied.

After thorough consideration of these propositions and the entire record before us on appeal, including the original record, transcripts and briefs of the parties, we have found no error warranting reversal or modification. Therefore, the Judgment and Sentence is **AFFIRMED**.

### DECISION

The Judgment and Sentence of the trial court is **AFFIRMED**.

LUMPKIN and STRUBHAR, JJ., concur.

CHAPEL, V.P.J., specially concurs.

LANE, J., concurs in result.

CHAPEL, Vice Presiding Judge, specially concurring:

I have come to the conclusion that while *Miller v. State*[1] was correctly decided under existing caselaw, the rationale underlying our older cases is flawed. The emphasis of the analysis in *Miller* and our older cases is on the jurisdictional issue. The District Courts in Oklahoma have subject matter jurisdiction over alleged violations of penal statutes. The fact that there may be a defect in the Information relative to the allegation does not deprive the District Court of jurisdiction. If a public offense is alleged in a verified Information the District Court has subject matter jurisdiction.

That an Information may be sufficient to invoke the District Court's jurisdiction does not mean that the Information is sufficient to

---

1. 827 P.2d 875 (Okl.Cr.1992).

put a defendant on notice of the charges against him. Our Federal and State Constitutions both require the State advise a person of the charges against him in order that an accused may defend against the charge. Issues relating to adequacy of the charging allegations are due process problems. Such problems can be raised by defendants and resolved by trial courts or by this court on appeal.

In *Tiger v. State* [2] we reversed a felony murder conviction from a guilty plea because the Information did not allege each element of the crime, including each element of the underlying felony. The Information in *Tiger* is essentially the same as the Information in the case before us today. If we follow *Tiger*, this case must also be reversed. *Tiger* relied upon *Miller* and a line of cases dating to before statehood which held that the failure to allege all of the elements of the crime in an Information deprived the trial court of "jurisdiction" to hear the case. If the trial court had no jurisdiction the Judgment and Sentence was void and reversal was required. *Tiger* was decided correctly under the law. I voted to concur-in-result in *Tiger* because while I believe in *stare decisis*, I could not agree with the legal analysis concerning the jurisdiction issue. Consistency in our law is important, but upon reflection I have determined that consistency should give way to reason. Therefore, I agree *Miller* and that line of cases should be overruled.

Absent the jurisdiction issue, the only question is whether or not the Information properly advised Parker of the charge against him. In this case there is no doubt Parker had clear notice of the charge and knew what he had to defend against. There is no due process violation here.

It is worthwhile to distinguish the case of *Pickens v. State* [3] as it shows the importance of proper pleading of allegations in an Information even under the rule we adopt today. In *Pickens*, the Information had language suggesting malice aforethought murder along with language appearing to allege felony murder (although elements of the underlying felony were not alleged). Taken as a whole,

the language was similar to the outdated language found in the previous first degree murder statute, 21 O.S.1973, § 701.1, which was repealed in 1976. The *Pickens* Information was ambiguous. Looking at the Information, no defendant could know what crime he was charged with or what he had to defend against. In *Pickens*, we applied the *Miller* rule and reversed. *Pickens* was correctly decided under the law at that time, and that decision would be correct under our current analysis.

LANE, Judge, concurs in result.

The majority uses this case to repeal the century old rule that an Indictment or Information must allege all of the essential elements of the offense that has been in existence since before statehood. *See, Parker v. Territory*, 9 Okl. 109, 59 P. 9 (1899). One of the strongest pronouncements of the rules is found in *Plotner v. State*, 762 P.2d 936, 940–941 (Okl.Cr.1988), wherein we stated:

> The basic criteria for determining the sufficiency of an Information or Indictment in Oklahoma were described in *Lamb v. State*, 626 P.2d 1355, 1356 (Okl.Cr.1981):
>
> > The test of the sufficiency of an Information is whether it alleges every element of the offense intended to be charged, and sufficiently apprises defendant of what he must be prepared to meet and so defines and identifies the offense that if convicted or acquitted will be able to defend himself against any subsequent prosecution of the same offense.

This pronouncement reflects a tripartite test, requiring a valid Information to include: (1) the essential elements of the offense charged [an "essential elements" test]; (2) a sufficient enough description of these elements to inform the defendant of the nature and cause of the charge [a "specificity" test]; and (3) a description adequate enough to permit a later defense of former jeopardy [a "double jeopardy" test]. Our analysis will be confined to tests (1) and (2), since a later claim of

---

**2.** 900 P.2d 406 (Okl.Cr.1995).

**3.** 885 P.2d 678, 683 (Okl.Cr.1994).

double jeopardy is seldom based on the face of the Information or Indictment alone. See *Woodring v. United States,* 376 F.2d 619, 622 (10th Cir.1967).

Essential Elements Test. It is well settled that a criminal Information or Indictment is insufficient if it does not allege all the essential elements of the offense charged. *Hendricks v. State,* 698 P.2d 477, 480 (Okl.Cr.1985); *Johnston v. State,* 681 P.2d 90, 92 (Okl.Cr.1984). If any essential element is omitted, it cannot be supplied by intendment or implication or liberal construction. *Group v. State,* 94 Okl.Cr. 401, 236 P.2d 997, 1000 (1951); *State v. Sowards,* 64 Okl.Cr. 430, 82 P.2d 324, 328 (1938). Such an omission renders the Information incapable of charging a crime and so fatally defective that it cannot confer jurisdiction upon the trial court. *White v. State,* 582 P.2d 1334, 1335 (Okl. Cr.1978). Moreover, these jurisdictional defects are not waived and may be raised at any time, even for the first time on appeal. *City of Tulsa v. Haley,* 554 P.2d 102, 103 (Okl.Cr.1976).

The majority recognizes these principles when it states that an Information "must set forth a statement of facts constituting the offense sufficient to form the essentials of the crime and apprise a defendant of what he must meet." However, the opinion then states this Court will no longer enforce the theory that a failure to comply with these dictates affects the jurisdiction of the trial court and, with particular emphasis on *Miller v. State,* 827 P.2d 875 (Okl.Cr.1992), overrules a long list of cases.

The majority misconstrues *Miller* when it states that *Miller* creates a rule that *all* defects in an Information are fatal to jurisdiction. The statement is overbroad. *Miller* only states that a *failure to allege all elements of a crime* does not confer jurisdiction on the trial court. It does not say that *all* defects deny jurisdiction.

However, the majority rejects even the more limited and correct statement of *Miller* and concludes that if an Information states that the defendant committed a crime within the venue of the court it is sufficient to confer jurisdiction. In other words, all that is necessary in the current case is to allege that the defendant committed the crime of murder without giving any of the particulars of the crime and that the murder occurred within Oklahoma County. Even though the majority cautions prosecutors "to be careful and to adequately plead acts sufficient to give notice as required by this opinion", the majority does not require it and says that it will be excused if you do a good job at preliminary and with discovery.

It is interesting to note that the majority does not discuss the statutes pertaining to what constitutes a proper Information. 22 O.S.1991, § 402 requires an Information to contain a statement of the acts constituting the offense. Section 402 of the same title dictates the Information set out the particular circumstances of the offense charged when they are necessary to constitute a complete offense. In *Miller* we found this statute requires that an Information must set forth facts to show all elements of the offense in order to constitute the offense.

The majority correctly states that *Miller* sets out a bright line rule that all Informations not alleging each element of a charge crime would be reversed.[1] The majority then states: "Where the Information alleges an offense and pleads particular facts constituting the offense in ordinary language, such that a person of common understanding can know what is intended and prepare a defense to the charge, no due process violation occurs." This implies that if the requisites are not met then a due process violation occurs. The majority then in effect creates a new "harmless error" doctrine by stating that the due process violation may be cured by looking to the material made available to the defendant at the preliminary examination or through discovery to determine if he or she had notice of the crime for which the charges were brought. Since under 22 O.S.Supp. 1994, § 2002 discovery does not have to be complete until ten days prior to trial, notice

---

1. The majority incorrectly states that *Miller* creates this rule. *See, Plotner,* and other cases cited therein.

as to all elements of the crime does not have to be completely furnished until that date. By this time the defendant has been arrested, charged, put through preliminary examination,[2] arraigned and has reached a point in the prosecution of the offense where trial is imminent. In my opinion, this is not due process.

The ability to use other sources than the Information to determine if a defendant has been given proper notice has been rejected in Oklahoma since before statehood. In *Jewell v. Territory*, 4 Okl. 53, 43 P. 1075 (1896) the court said in Syllabus 4:

> An indictment must fully charge the crime, and set out all that the law requires to be proved; and want of averment cannot be supplied by an independent finding of fact not alleged in the indictment.

I see no reason to change today, particularly since no legal precedent has been presented to justify the change.

This does not mean that I would reverse our present case on this issue. The latest of our cases to find that an Information charging felony murder must allege the elements of the underlying felony is *Tiger v. State*, 900 P.2d 406, 408 (Okl.Cr.1995). *Tiger* relied upon the following language in *Pickens v. State*, 885 P.2d 678 (Okl.Cr.1994): "An information intended to charge a defendant with felony murder must recite facts to allege every element of the underlying felony." This statement is based on an interpretation of *Miller*. I believe we made a mistake in reaching this conclusion. In the situation presented in *Tiger*, *Pickens* and the current case, the allegation of the commission of the underlying felony is an allegation of fact and not a charge of the crime. As such the allegation gives the defendant notice that he is being accused of committing murder while in the commission of the predicate felony. The elements of the underlying felony do not have to be alleged unless the State is also charging and prosecuting the defendant separately for the felony. Therefore, I would affirm the judgment and sentence in this case, but reject the majority's reasoning concerning the Information.

---

2. Even the effectiveness of a preliminary examination from the perspective of the defendant has been lessened by 22 O.S.Supp.1994, § 258 since it is no longer the discovery tool it once was due to the automatic cut off of the hearing when a bare minimum of proof has been presented.